**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAREN DONGES,                                           Case No. 1:12-cv-314
          Plaintiff,                                    Dlott, J.
                                                        Litkovitz, M.J.

    vs.

COMMISSIONER OF                                         **REPORT AND**
SOCIAL SECURITY,                                        **RECOMMENDATION**
          Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB).   This matter is before the Court on plaintiff's Statement

of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply

memorandum.   (Doc. 17).

**I.  Procedural Background**

Plaintiff filed an application for DIB in June 2008, alleging disability since April 11,

2007, due to fatigue, back pain, Epstein-Barr virus, and depression.   Plaintiff's application was

denied initially and upon reconsideration.   Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon.   Plaintiff and a

vocational expert (VE) appeared and testified at the ALJ hearing.   On November 22, 2010, the

ALJ issued a decision denying plaintiff's DIB application.   Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec'y*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec'y*, 378 F.3d 541, 548 (6th Cir.

2004).   Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

## B.   The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since April 11, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: fibromyalgia, mild lumbar degenerative disc disease, cervical degenerative disc disease, Epstein-Barr virus, asthma, depression, and anxiety (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: she can occasionally crouch, crawl, stoop, kneel, and climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds.  She can never work around hazards, such as unprotected heights or dangerous machinery, and she can have no concentrated exposure to temperature extremes, or pulmonary irritants, such as smoke, dust, fumes, noxious gasses or odors, or poorly ventilated areas. Mentally, she is limited to simple, repetitive tasks.  She can have only occasional contact with coworkers and supervisors, and no contact with the general public. She cannot engage in rapid production pace work and she is limited to jobs involving very little, if any, adaptation to change.

6. The [plaintiff] is unable to perform any past relevant work[1] (20 CFR 404.1565).

7. The [plaintiff] was born [in] . . . 1971 and was 35 years old, which is defined as a younger individual age 18-44 on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 11, 2007, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec'y*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec'y*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff has past relevant work as a consultant, employee development manager, human resource advisor, and college instructor. (Tr. 20, 159, 170, 264).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 1,152 unskilled, sedentary jobs in the regional economy, citing as examples of such jobs a courier/messenger, document preparer or hand packager. (Tr. 21, 56-57).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec'y*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to give weight and deference to the opinions of plaintiff's treating physician, Dr. Nadal; (2) the ALJ failed to properly consider all of plaintiff's physical and psychological impairments and the combined impact thereof; and (3) the ALJ erred in assessing plaintiff's pain, credibility, and subjective complaints.

**1.  The ALJ's decision to afford Dr. Nadal's opinion "little weight" is not supported by substantial evidence and should be reversed.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec'y*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the

6

medical specialty of the source, how well-supported by evidence the opinion is, how consistent

the opinion is with the record as a whole, and other factors which tend to support or contradict

the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at

544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole,* 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[3]). Those

reasons must be "supported by the evidence in the case record, and must be sufficiently specific

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Plaintiff asserts the ALJ erred in weighing the medical opinion of Dr. Fara Nadal,

plaintiff's treating physician from November 5, 2005 through June 23, 2008. Dr. Nadal opined

that plaintiff could frequently lift and carry up to ten pounds; could occasionally lift and carry up

to twenty pounds; could occasionally climb, twist, bend, stoop and reach above shoulder level;

but could not sit for more than two hours in an eight-hour workday, and could not stand or walk

for more than one hour in an eight-hour workday. (Tr. 633-34). The ALJ gave Dr. Nadal's

opinion "some weight," and reduced plaintiff's RFC from light – as a more recent state agency

physician had assessed (Tr. 623-30) – to sedentary. (Tr. 19). However, the ALJ gave "little

weight" to Dr. Nadal's assessment to the extent that Dr. Nadal opined that plaintiff "could not do

sedentary work. . . ." (Tr. 19). The ALJ enumerated the following reasons for his decision:

> First, the undersigned notes that the [plaintiff's] most significant musculoskeletal
> problem is her cervical degenerative disc disease. Although the annular tearing

---

[3]Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

may limit her to lifting consistent with sedentary level work, it does not significantly diminish her ability to stand/walk or sit as Dr. Nadal suggests. Second, the [plaintiff's] documented level of treatment is not consistent with total disability.   As discussed above, she has received entirely conservative measures for her complaints of neck and other diffuse musculoskeletal pain.   Third, Dr. Nadal's assessment indicates that all objective data in this case has been negative except for the elevated Epstein Barr titer (*Id.* at 1 ).   By itself, however, Epstein Barr titer does not justify a less than sedentary RFC assessment.

(Tr. 19).

The ALJ's decision giving little weight to the opinion of Dr. Nadal is not supported by substantial evidence and his justifications are not "good reasons" under Sixth Circuit precedent for discounting Dr. Nadal's opinion.   First, the ALJ stated the "annular tearing" associated with plaintiff's cervical disc disease (Tr. 561) does not significantly limit plaintiff's ability to stand, walk or sit.   (Tr. 19).   The ALJ failed to cite any medical evidence in support of his decision to discount Dr. Nadal's opinion based on plaintiff's cervical disc disease, and the ALJ's stated reason appears to be based on his own lay opinion of the evidence.   More importantly, the ALJ's stated reason ignores the primary basis for Dr. Nadal's opinion: chronic fatigue.   (Tr. 633).   Dr. Nadal identified "chronic fatigue" as the primary diagnosis that prevents plaintiff from working (Tr. 633) and noted that plaintiff experienced "constant severe fatigue."   (Tr. 634).   Dr. Nadal reported that plaintiff's secondary diagnoses included chronic back pain and depression, noting plaintiff suffered constant upper back pain and chronic low mood and insomnia.   *Id.*   Dr. Nadal did not release plaintiff for return to work because of her inability to sustain prolonged standing, walking and sitting, and she limited plaintiff's exposure to stressful situations.   (Tr. 634).

The chronic fatigue identified by Dr. Nadal – the primary basis for her opinion – is amply supported by Dr. Nadal's records and is consistent with the other substantial evidence of record. Throughout Dr. Nadal's nearly three-year treatment of plaintiff, during which she examined

8

plaintiff on at least 21 occasions, Dr. Nadal noted plaintiff's persistent symptoms of chronic fatigue, insomnia, exhaustion, depression, anxiety, back pain and spasms, and fibromyalgia. (Tr. 445-467, 632). The treatment records of treating and examining physicians subsequent to Dr. Nadal confirm plaintiff continued to suffer from chronic fatigue syndrome, chronic Epstein-Barr virus (EBV) infection[4], sleep apnea, fibromyalgia, depression, and myofascial pain involving the thoracic and lumbar musculature on an ongoing basis. (Tr. 368-87, 427, 439, 645-654; 747-756). Instead of addressing the consistency of this evidence with Dr. Nadal's opinion regarding chronic fatigue syndrome and plaintiff's attendant limitations, the ALJ focused on a single clinical finding unrelated to plaintiff's chronic fatigue. The ALJ's reasoning in this regard does not provide good support for discounting Dr. Nadal's opinion.

Second, the ALJ cited to the lack of "objective data" except for the elevated Epstein-Barr titer (Tr. 19) as a reason to discount Dr. Nadal's opinion. The ALJ's rationale is unsupported for several reasons. It is undisputed that plaintiff's chronic fatigue is associated with her elevated EBV titer. Dr. Nadal's report and treatment records reflect the association between plaintiff's chronic fatigue and elevated EBV (Tr. 633, 450, 455) and the ALJ himself acknowledged that plaintiff experiences fatigue or malaise from her positive EBV titer. (Tr. 18). However, the ALJ concluded that plaintiff's fatigue and malaise are "certainly more than adequately accommodated by sedentary level limitations" (Tr. 18) and that the Epstein-Barr titer "by itself" does not justify a less than sedentary RFC. (Tr. 19). Yet, the evidentiary basis for the ALJ's conclusion is not at all clear. The ALJ cited no medical evidence supporting his conclusion

---

[4]"Due to the close association and suspected causal relationship between the chronic Epstein-Barr virus and chronic fatigue syndrome, the two are sometimes referred to synonymously." *Cohen v. Sec'y of HHS*, 964 F.2d 524, 529 (6th Cir. 1992).

about the relationship between plaintiff's fatigue, malaise, and EBV titer and her functional capacity.  *Cole*, 661 F.3d at 937 (ALJ's reasons must be "supported by the evidence in the case record").

In addition, Dr. Nadal's findings of chronic fatigue and attendant limitations are consistent with plaintiff's diagnosis of fibromyalgia, for which she received treatment by Dr. Nadal and her subsequent medical providers.  By focusing on the lack of objective medical data in assessing the weight to the treating physician and, by extension, plaintiff's RFC, the ALJ failed to evaluate plaintiff's fibromyalgia in accordance with Sixth Circuit precedent.

Fibromyalgia is a condition that "causes severe musculoskeletal pain which is accompanied by stiffness *and fatigue* due to sleep disturbances."  *Preston v. Sec'y HHS,* 854 F.2d 815, 817-820 (6th Cir. 1988) (emphasis added).[5]   In the context of social security disability cases, fibromyalgia presents particularly challenging issues in determining credibility, RFC, and disability because its symptoms are entirely subjective.  *See Rogers,* 486 F.3d at 243 n. 3. Similar to chronic fatigue syndrome, *Cohen v. Sec'y of HHS,* 964 F.2d 524, 529 (6th Cir. 1992), fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity.  *Preston,* 854 F.2d at 820.  *See also Rogers,* 486 F.3d at 243-44 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"); *Swain v. Comm'r of Soc. Sec'y,* 297 F. Supp.2d 986, 990 (N.D. Ohio 2003) ("[f]ibromyalgia is an 'elusive' and 'mysterious' disease.  It has no known cause and

---

[5]In *Preston,* the term "fibrositis" was used instead of "fibromyalgia."  Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis.  *See* Merck Manual Online, http://www.merckmanuals.com/ home/bone_joint_and_muscle_disorders/muscle_bursa_and_tendon_disorders/fibromyalgia.html?qt=fibromyalgia& alt=sh (last visited June 17, 2013).

no known cure.   Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and

multiple acute tender spots at various fixed locations on the body.") (footnotes and citations

omitted).   As the *Preston* Court explained:

> [F]ibrositis [the term previously used for fibromyalgia] causes severe
> musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep
> disturbances.   In stark contrast to the unremitting pain of which fibrositis patients
> complain, physical examinations will usually yield normal results-a full range of
> motion, no joint swelling, as well as normal muscle strength and neurological
> reactions.   There are no objective tests which can conclusively confirm the
> disease; rather it is a process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness which is characteristic in
> fibrositis patients.   The medical literature also indicates that fibrositis patients
> may also have psychological disorders.   The disease commonly strikes between
> the ages of 35 and 60 and affects women nine times more than men.

854 F.2d at 817-18.   *In accord Rogers,* 486 F.3d at 244.

It is undisputed that plaintiff suffers from fibromyalgia.   The ALJ made a factual finding

at Step 2 of the sequential evaluation process that plaintiff's fibromyalgia is a severe impairment

under the Social Security regulations. (Tr. 14, Finding # 3, citing 20 C.F.R. § 404.1520(c)).

Once the ALJ made a factual finding that plaintiff suffers from the severe impairment of

fibromyalgia, it was incumbent upon the ALJ to apply the correct legal standard for evaluating

this impairment and to not discount the opinion of plaintiff's treating physician based on the lack

of "objective" evidence.   Dr. Nadal's progress notes document consistent complaints of pain,

achiness, sleep problems, chronic fatigue and depression, and tenderness in the lumbar and

cervical spine — all classic symptoms associated with fibromyalgia.   (Tr. 445-467).   *See*

*Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820.   The evidence from plaintiff's other treating

and examining physicians is likewise consistent for fibromyalgia, chronic fatigue, and diffuse

pain.   *See* Tr. 368-378 (1/08-2/08: Dr. Hofmann, pain rehabilitation specialist, diagnosed

11

chronic fatigue syndrome and chronic pain syndrome, noting an inability to participate in full-time pain program due to excessive fatigue); Tr. 419-424 (4/08-6/08: Dr. Dewey, neurologist, noted normal neurological exam and suspected symptoms of memory loss and poor concentration were related to depression and chronic fatigue syndrome); Tr. 645-654 (10/08-2/09: Fairfield Primary Care assessed fibromyalgia, sleep apnea, chronic fatigue syndrome, depression, chronic EBV infection); Tr. 715 (3/09: Dr. Simpson diagnosed chronic fatigue syndrome and noted likely fibromyalgia); Tr. 797-802 (7/09-10/09: Dr. Schertzinger diagnosed myofascial pain syndrome, fibromyalgia, chronic fatigue syndrome); Tr. 747-56 (3/10-9/10: Dr. Maxwell diagnosed fibromyalgia and complaints of fatigue). The ALJ's reliance on the lack of "objective" evidence to discount Dr. Nadal's functional capacity assessment is inconsistent with plaintiff's diagnosis of fibromyalgia, as well as her chronic fatigue syndrome. *Rogers*, 486 F.3d at 243. The ALJ's decision in this regard is not supported by substantial evidence.

Third, the ALJ discounted Dr. Nadal's opinion because he believed that plaintiff's level of treatment was not consistent with "total disability," noting she received "conservative" treatment for her neck and musculoskeletal pain. (Tr. 19). The ALJ stated that plaintiff underwent physical therapy, massage, pain medications, and use of a TENS unit, but there was no indication of "a need for surgical intervention, epidural injections, or other more aggressive measures." *Id.* The ALJ's decision implies that in the absence of surgery or more aggressive forms of treatment such as surgery, Dr. Nadal's opinion is not supported. Again, the reason posited by the ALJ ignores the primary basis for Dr. Nadal's functional assessment – chronic fatigue. Nor is it apparent that more aggressive modes of treatment, such as surgery, would be

appropriate to treat plaintiff's chronic fatigue, chronic back pain/fibromyalgia, and depression. The record shows that throughout the three years (and documented twenty-one visits) that Dr. Nadal treated plaintiff for persistent symptoms of chronic fatigue, insomnia, exhaustion, depression, anxiety, back pain and spasms, and fibromyalgia, she frequently adjusted plaintiff's pain and depression medications, prescribed a TENS unit, and referred plaintiff to physical therapy, a pain rehabilitation program, and psychotherapy in an attempt to treat plaintiff's pain, chronic fatigue syndrome, and depression.   There is no indication in the record that more aggressive forms of treatment existed for these conditions in addition to the ones plaintiff was already prescribed.   Under the circumstances, the ALJ's stated reason for discounting Dr. Nadal's opinion is without substantial support in the record.

Finally, there is no indication in the ALJ's decision that he considered the § 404.1527(c) factors when weighing Dr. Nadal's opinion.   Under the Social Security regulations, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406.   The ALJ's failure to consider the regulatory factors is particularly troubling here in light of Dr. Nadal's lengthy treatment relationship with plaintiff, number and frequency of examinations, and consistency of her opinion with the other record evidence.

The ALJ's reasons for discounting Dr. Nadal's functional capacity assessment and for affording Dr. Nadal's opinion "little weight" lack substantial evidentiary support.

13

The evidence relied on by the ALJ does not demonstrate that the treating physician's functional limitations were inconsistent with the substantial evidence of record or that Dr. Nadal's opinion was unsupported.   The ALJ failed to consider the length of treatment and supportability of Dr. Nadal's opinion in assessing the weight to give her opinion.   In this case, Dr. Nadal's assessment that plaintiff's has the functional capacity for less than sedentary work is based on a well-documented and lengthy treatment history, and was not contradicted by any substantial evidence to the contrary.   Based on the foregoing, the undersigned finds the ALJ erred in rejecting the treating physician's opinion.   The ALJ's decision is not supported by substantial evidence and should be reversed.[6]

### 2.   This matter should be reversed and remanded for an award of benefits.

This matter should be remanded for an award of benefits.   "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits." *Faucher v. Sec'y of HHS,* 17 F.3d 171, 176 (6th Cir. 1994).   *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of HHS,* 820 F.2d 777, 782 (6th Cir. 1987).   Based on the residual functional capacity assessment of Dr. Nadal, plaintiff would be unable to perform even a limited range of sedentary work for a full 8-hour workday.   Dr. Nadal assessed that plaintiff was not capable of sitting, standing and walking in combination for a total of at least eight hours in a work-day. This would preclude plaintiff from performing work on a "regular and continuing" basis for a 40-hour work week as required by Social Security Ruling 96-8p.   The medical evidence subsequent to Dr. Nadal's functional capacity assessment consistently shows

---

[6]In view of the above analysis, the Court need not reach the other assignments of error raised by plaintiff.

14

plaintiff continued to suffer from and was substantially limited by persistent and chronic

fatigue and pain.[7]   Thus, the proof of disability is strong and opposing evidence is

lacking in substance.   A remand in this matter would merely involve the presentation of

cumulative evidence and would serve no useful purpose.   *Faucher*, 17 F.3d at 176.   *See*

*also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d

966, 973 (6th Cir. 1985).   Accordingly, this matter should be remanded for an award of

benefits.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for an award of

benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: 6/19/13

Karen L. Litkovitz
United States Magistrate Judge

---

[7]The only other RFC assessments in the record are from the state agency non-examining physicians, who opined that plaintiff could perform "medium" and "light" work, but these were rejected by the ALJ who determined plaintiff could perform only a "limited range of sedentary work."   (Tr. 19).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KAREN DONGES,                                    Case No. 1:12-cv-314
    Plaintiff,                              Dlott, J.
                                     Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

16